## No. 21-60532

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED NATURAL FOODS, INCORPORATED, *doing business as*
UNITED NATURAL FOODS, INCORPORATED AND SUPERVALU, INCORPORATED,

*Petitioner*

v.

NATIONAL LABOR RELATIONS BOARD,

*Respondent.*

Petition for Review of an Order of the
National Labor Relations Board
Agency No. 19-CA-249264
Agency No. 19-CB-250856

## BRIEF OF INTERVENORS TEAMSTERS LOCAL
## 117 AND TEAMSTERS LOCAL 313

Danielle Franco-Malone
Ben Berger
BARNARD IGLITZIN & LAVITT LLP
18 West Mercer Street, Ste. 400
Seattle, WA 98119-3971
Tel: (206) 257-6011
franco@workerlaw.com
berger@workerlaw.com

*Attorneys for Intervenors Teamsters Local
117 and Local 313*

18 WEST MERCER ST., STE. 400     BARNARD

SEATTLE, WASHINGTON 98119     IGLITZIN &

TEL 800.238.4231 | FAX 206.378.4132     LAVITT LLP

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Petitioner United Natural Foods, Inc., (UNFI) is a publicly traded corporation, and to UNFI's knowledge as of the date hereof, BlackRock, Inc., is the only publicly held corporation that owns 10% or more of the outstanding shares of UNFI.

2. Petitioner SuperValu, Inc., is a wholly-owned subsidiary and/or affiliate of UNFI.

3. Morgan, Lewis & Bockius LLP is counsel for Petitioner.

4. Philip A. Miscimarra is counsel for Petitioner.

5. Michael E. Kenneally is counsel for Petitioner.

6. Lauren M. Emery is counsel for Petitioner.

7. Respondent the National Labor Relations Board (NLRB) is a federal agency.

8. Ruth E. Burdick is Deputy Associate General Counsel, Appellate and Supreme Court Litigation Branch, for Respondent.

9. Dawn L. Goldstein is Assistant General Counsel for Respondent.

10. Steven Bieszczat is counsel for Respondent.

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

11. Dalford Dean Owens, Jr., is counsel for Respondent.

12. Heather Beard is counsel for Respondent.

13. Intervenor Teamsters Local 117 is a labor organization.

14. Intervenor Teamsters Local 313 is a labor organization.

15. Barnard Iglitzin & Lavitt LLP is counsel for Intervenors.

16. Danielle Franco-Malone is counsel for Intervenors.

17. Ben Berger is counsel for Intervenors.

Dated: February 22, 2022          *s/ Danielle Franco-Malone*
                                  Danielle Franco-Malone
                                  Ben Berger

                                  *Attorneys for Intervenors Teamsters Local
                                  117 and Local 313*

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

## STATEMENT REGARDING ORAL ARGUMENT

Intervenors believe that oral argument is unnecessary given that the case involves well-settled law. If the Court determines that oral argument is necessary, Intervenors respectfully request the opportunity to participate.


Dated: February 22, 2022                 *s/ Danielle Franco-Malone*
                                         Danielle Franco-Malone
                                         Ben Berger

                                         *Attorneys for Intervenors Teamsters Local 117 and Local 313*

18 WEST MERCER ST., STE. 400   **BARNARD**

SEATTLE, WASHINGTON 98119   **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132   **LAVITT LLP**

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................... I

STATEMENT REGARDING ORAL ARGUMENT ........................................... III

TABLE OF CONTENTS ............................................................................. IV

TABLE OF AUTHORITIES .......................................................................... VI

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF THE ISSUES ......................................................................1

STATEMENT OF THE CASE .........................................................................1

   I.  The Underlying Dispute .................................................................1

   II. Procedural History ........................................................................3

SUMMARY OF ARGUMENT ........................................................................6

STANDARD OF REVIEW .............................................................................8

ARGUMENT ..............................................................................................9

   I.  The Board Reasonably Determined That The Regional Director's Decision
      To Withdraw Complaint Was Not Subject To Board Review Because
      UNFI's Motion For Summary Judgment Did Not Divest The Acting General
      Counsel Of His Absolute Prosecutorial Discretion.........................................9

      A.The Board Reasonably concluded that the Act vests the General Counsel
        with unreviewable discretion to withdraw a complaint prior to hearing.....9

      B.The Board reasonably concluded that UNFI's mere filing of a motion for
        summary judgment does not unilaterally transfer the case to the Board, so
        that the AGC retained absolute discretion to dispose of the complaint.....13

   II. Even If The Withdrawal Of The Instant Complaint Is Reviewable, Acting
      General Counsel Ohr Was Empowered To Withdraw The Complaint

18 WEST MERCER ST., STE. 400 **BARNARD**

SEATTLE, WASHINGTON 98119 **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132 **LAVITT LLP**

Because President Biden Properly Removed Former General Counsel Robb And Designated Mr. Ohr His Acting Replacement........................................22

A. President Biden was authorized to designate an Acting General Counsel because the Office of General Counsel was vacant on January 25, 2021. 23

B. Under well-established principles of contract interpretation, § 3(d) of the NLRA provides no removal protection to the General Counsel................25

C. The Company's claim that the term-of-office provision in § 3(d) insulates the General Counsel from removal is directly refuted by *Collins*. ............26

D. The Company's position is not only refuted by *Collins*, but is based on arguments rejected since the founding of our nation. ...............................28

E. None of the cases cited by the Company support interpreting § 3(d) to provide the General Counsel removal protection. .....................................33

F. The Company's remaining arguments cannot overcome the unambiguous statutory language, and lack merit regardless. ...........................................38

CONCLUSION .............................................................................................40

CERTIFICATE OF SERVICE ...........................................................................42

CERTIFICATE OF COMPLIANCE .....................................................................43

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aakash, Inc.*,
371 NLRB No. 46 (2021) ...............................................................26

*ADT, LLC*,
365 NLRB No. 77 (2017) ...............................................................18

*Boilermakers Union Local 6 v. NLRB*,
872 F.2d 334 (9th Cir. 1989) .........................................................21

*Carlucci v. Doe*,
488 U.S. 93 (1988)..........................................................................29

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984).....................................................................8, 9

*Cochran v. SEC*,
20 F.4th 194 (5th Cir. 2021) ..........................................................23

*Collins v. Mnuchin*,
896 F.3d 640 (5th Cir. 2018), *aff'd and reinstated in relevant part
on reh'g en banc*, 938 F.3d 553 (5th Cir. 2019), *aff'd in relevant
part sub nom. Collins v. Yellen* ......................................................29

*Collins v. Yellen*,
141 S. Ct. 1761 (2021).............................................................*passim*

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
561 U.S. 477 (2010)..................................................................32, 33

*Glomac Plastics, Inc.*,
241 NLRB 348 (1979) ....................................................................21

*Goonan v. Amerinox Processing, Inc.*,
2021 WL 2948052 (D. N.J. July 14, 2021) ...............................24, 26

*Guerdon Indus., Inc.*,
127 NLRB 810 (1960) ....................................................................21

18 WEST MERCER ST., STE. 400  **BARNARD**

SEATTLE, WASHINGTON 98119  **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132  **LAVITT LLP**

*In re Hennen*,
    38 U.S. 230 (1839) ............................................................................29

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935) ...........................................................34, 35, 36, 37

*Independent Stave Co.*,
    287 NLRB 740 (1987) ......................................................................13

*Marbury v. Madison*,
    5 U.S. 137 (1803) .......................................................................33, 34

*Myers v. United States*,
    272 U.S. 52 (1926) .............................................................29, 30, 33, 34

*N.L.R.B. v. United Food and Commercial Workers Union, Local 23*,
    484 U.S. 112 (1987) ...................................................................*passim*

*Parsons v. United States*,
    167 U.S. 324 (1897) ...................................................................*passim*

*Pievsky v. Ridge*,
    98 F.3d 730 (3d Cir. 1996) ..............................................................32

*Robinson Freight Lines*,
    117 NLRB 1483 (1957) ...................................................................12

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020) ...............................................................*passim*

*Severino v. Biden*,
    2022 WL 168321 (D.D.C. Jan. 19, 2022) ...........................................31

*Sheet Metal Workers Int'l Ass'n, Local Union 28 (American Elgen)*,
    306 NLRB 981 (1992) .................................................10, 13, 16, 21

*Shurtleff v. United States*,
    189 U.S. 311 (1903) .......................................................................30

*Spicer v. Biden*,
    2021 WL 5769458 (D.D.C. Dec. 4, 2021) ....................................33, 34

18 WEST MERCER ST., STE. 400   **BARNARD**

SEATTLE, WASHINGTON 98119   **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132   **LAVITT LLP**

*UFCW v. United States*,
  167 U.S. 324 (1897)...............................................................*passim*

*UPMC*,
  365 NLRB No. 153 (2017) ..............................................................12

*Weiner v. United States*,
  357 U.S. 349 (1958)................................................34, 35, 36, 37

**Statutes**

5 U.S.C. § 3345(a) ............................................................................36

5 U.S.C. § 3345, *et seq*....................................................................36

5 U.S.C. § 3348(b) ............................................................................36

5 U.S.C. § 3348(e) ............................................................................36

5 U.S.C. § 3349c(1) ..........................................................................36

12 U.S.C. § 4501 *et seq*...................................................................27

12 U.S.C. § 4512(f).....................................................................27, 28

29 U.S.C. § 153(a) ............................................................................25

29 U.S.C. § 153(d)............................................................6, 9, 23, 35

29 U.S.C. § 160 .................................................................................35

29 U.S.C. § 160(f) ..............................................................................1

29 U.S.C. § 185 ...................................................................................4

Federal Vacancies Reform Act ........................................................36

National Labor Relations Act ....................................................*passim*

War Claims Act of 1948 ...................................................................35

**Rules & Regulations**

29 C.F.R. § 102.18 ......................................................................*passim*

BRIEF OF INTERVENORS TEAMSTERS
LOCAL 117 an LOCAL 313 - viii

18 WEST MERCER ST., STE. 400  **BARNARD**

SEATTLE, WASHINGTON 98119  **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132  **LAVITT LLP**

29 C.F.R. § 102.24 ........................................................................15

29 C.F.R. § 102.24(b) ..................................................................18

29 C.F.R. § 102.50 ........................................................................14

Rule 102.18 ..................................................................................11

**Other Authorities**

93 Cong. Rec. 7001 (1947), *reprinted in* 2 LMRA Leg. Hist. at 1623 .................39

House Conf. Rept. No. 510, 80th Cong., 1st sess., p. 37, *reprinted in* 1
    LMRA Leg. Hist. 541 ...............................................................39

Joseph A. Loftus, *Denham Quits Job with Reluctance*, N.Y. Times,
    Sept. 17, 1950 ........................................................................40

*Peter Sung Ohr Named Acting General Counsel,* NLRB, (Jan. 25,
    2021), https://www.nlrb.gov/news-outreach/news-story/peter-sung-
    ohr-named-acting-general-counsel .......................................4

18 WEST MERCER ST., STE. 400   **BARNARD**

SEATTLE, WASHINGTON 98119   **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

## JURISDICTIONAL STATEMENT

For the reasons discussed in appellee's Motion to Dismiss filed on August 9, 2021, which Intervenor incorporates by reference here, this Court lacks jurisdiction over the Petition for Review. In brief, the Board Order is not a final order under Section 10(f) of the National Labor Relations Act (Act or NLRA), 29 U.S.C. § 160(f), and this Court lacks subject matter jurisdiction to review the prosecutorial actions of the General Counsel, over which the General Counsel has final authority.

## STATEMENT OF THE ISSUES

1.      Whether the Board Order denying UNFI's request for special permission to appeal the Regional Director's withdrawal of the Complaint against the Unions is a "Final Order" reviewable under 29 U.S.C. §160(f).

2.      Whether Acting General Counsel Peter Ohr, having been lawfully appointed by President Biden following the removal of former General Counsel Peter Robb, had authority to withdraw the Complaint in Case Number 19-CB-250856.

## STATEMENT OF THE CASE

### I.      The Underlying Dispute

Teamsters Locals 313 and 117 served as exclusive bargaining representatives for units of employees at a grocery distribution center located in

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

Tacoma, Washington.[1] Both Unions entered into collective bargaining agreements (CBAs) with grocery chain SuperValu, Inc., effective from July 15, 2018, through July 17, 2021.[2] UNFI acquired SuperValu on October 22, 2018, became SuperValu's successor-in-interest, and assumed SuperValu's CBA obligations.[3]

Both Unions' CBAs covering warehouse employees contain identical "Movement of Facilities" provisions.[4] This language concerns UNFI's obligations to give Tacoma-based employees the opportunity to transfer to a new facility located within a certain geographic scope; what, if any, contract terms should apply to transferees; and under what circumstances UNFI must recognize the Unions as bargaining representatives of units at the new facility.[5]

On February 5, 2019, UNFI announced that it would consolidate its operations by opening a new distribution center in Centralia, Washington, while closing the Tacoma facility.[6] During a meeting on March 18, 2019, UNFI informed the Unions that it did not believe the Movement of Facilities language applied to its transfer of operations from Tacoma to Centralia and would therefore not offer Tacoma employees the opportunity to transfer to the new facility, much less apply

---

[1] Complaint, ¶¶ 3-4, *United Nat. Foods,* No. 19-cv-1736, ECF No. 1.
[2] *Id.* at ¶¶ 9-11, Exs. B-D.
[3] *Id.* at ¶¶ 13.
[4] *Id.* at ¶¶ 9-10, Exs. B (Sec. 1.01.2), C (Sec. 1.5).
[5] *Id.*
[6] *Id.* at ¶ 14.

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

to them the same terms and conditions they previously enjoyed.[7] UNFI later denied applications by several Tacoma employees to work at Centralia and ignored the written requests of approximately 150 others to transfer to Centralia.[8] UNFI has since laid off all of its Tacoma employees, many of whom were unable to find work.[9]

Following UNFI's refusal to honor the terms of the contracts, the Unions filed grievances against UNFI for violating their respective CBAs' Movement of Facilities provisions.[10] On October 7, 2019, an Arbitrator issued an award finding that UNFI had indeed breached the CBAs by refusing to apply the Movement of Facilities provisions to its transfer of operations.[11] To remedy the violation, the award ordered UNFI to reinstate and make whole laid-off unit members, give all Tacoma employees the chance to transfer to Centralia, and apply to them the same terms and conditions they previously enjoyed.[12] To date, UNFI has refused to comply with the Award.[13]

## II.    Procedural History

On October 28, 2019, UNFI filed an unfair labor practice charge, alleging

---

[7] Unions' Counterclaims, ¶12, *United Nat. Foods,* No. 19-cv-1736, ECF No. 9.

[8] *Id.* at ¶¶ 15-16.

[9] *Id.* at ¶ 23; *United Nat. Foods,* No. 19-cv-1736, Order Denying UNFI's Motion to Reinstate Stay, ECF No. 69 at 6.

[10] Complaint, at ¶ 14.

[11] Complaint, at ¶ 22, *United Nat. Foods,* No. 19-cv-1736, ECF No. 1; NLRB's Motion to Dismiss (MTD), ECF Doc 00515976614, Ex. 3 (hereinafter, Arbitration Award).

[12] Complaint, at ¶ 23, *United Nat. Foods,* No. 19-cv-1736, ECF No. 1.

[13] Unions' Counterclaims, ¶23, *United Nat. Foods,* No. 19-cv-1736, ECF No. 9.

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

that the Unions' effort to enforce the Arbitration Award violated Sections 8(b)(1)(A), 8(b)(2), and 8(b)(3) of the Act.[14] The same day, UNFI also filed a complaint in federal district court for the Western District of Washington under 29 U.S.C. § 185 seeking to vacate the award.[15] UNFI promptly moved the district court to stay its own lawsuit pending the outcome of the unfair labor practice, which was eventually granted.[16]

On July 29, 2020, Region 19 of the NLRB issued a Consolidated Complaint in Case Numbers 19-CA-249264 and 19-CB-250856, and scheduled a hearing for March 2, 2021.[17]

Following his inauguration, President Biden removed Peter Robb from office and on January 25, 2021, appointed Peter Sung Ohr as Acting General Counsel (AGC).[18] On January 29, 2021, the Unions requested that AGC Ohr reconsider and withdraw the consolidated complaint, and also that the Regional Director postpone the hearing by 30 days in order to give the AGC the opportunity to evaluate the Unions' request.[19]

On February 1, 2021—three days after the Unions submitted their

---

[14] ROA 1-4.
[15] Complaint, at ¶ 23, *United Nat. Foods,* No. 19-cv-1736, ECF No. 1.
[16] Motion for Temporary Stay, *United Nat. Foods,* No. 19-cv-1736, ECF No. 24; Order Granting Motion for Temporary Stay, *United Nat. Foods,* No. 19-cv-1736, ECF No. 53.
[17] ROA 16-31. The charge against UNFI was later settled and is not relevant to this appeal.
[18] Press Release, NLRB, *Peter Sung Ohr Named Acting General Counsel* (Jan. 25, 2021), https://www.nlrb.gov/news-outreach/news-story/peter-sung-ohr-named-acting-general-counsel
[19] ROA 375, 137.

BRIEF OF INTERVENORS TEAMSTERS
LOCAL 117 an LOCAL 313 - 4

18 WEST MERCER ST., STE. 400    BARNARD
SEATTLE, WASHINGTON 98119    IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132    LAVITT LLP

reconsideration request and motion to extend the hearing—UNFI filed a motion to sever a related charge against it, to transfer the case against the Unions to the Board, and for summary judgment in the case against the Unions.[20]

On February 4, 2021, the Director of Region 19 granted the Unions' request for an extension and set a new hearing date of April 6, 2021.[21] Three weeks later, on February 24, 2021, the Director of Region 19 withdrew the complaint against the Unions and dismissed the charge against the Unions, noting that "the Acting General Counsel, pursuant to his prosecutorial discretion, does not wish to pursue the prosecution of Case 19-CB-250856."[22]

On March 9, UNFI filed a request for special permission to appeal the Regional Director's order dismissing the charge against the Unions.[23] The following day, it appealed the Regional Director's Order to the Acting General Counsel.[24]

On May 11, the Board denied UNFI's request for special permission to appeal the Regional Director's order dismissing the charge against the Unions, on the basis that the request was not properly before the Board and that the decision to withdraw the Complaint before a hearing had commenced was not reviewable by

---

[20] ROA 65-136, 144-80 (corrected brief).
[21] ROA 205-06.
[22] ROA 269-71.
[23] ROA 308-76.
[24] MTD, Ex. 16.

BRIEF OF INTERVENORS TEAMSTERS
LOCAL 117 an LOCAL 313 - 5

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

the Board.[25]

The Acting General Counsel denied UNFI's appeal of the withdrawal of the complaint on June 22.[26]

Subsequently, on June 30, the district court lifted the stay.[27] Motions for summary judgment are currently pending before the district court.[28]

## SUMMARY OF ARGUMENT

The General Counsel has "final authority" over the prosecution of unfair labor practice complaints, including the decision of whether a complaint is strong enough to continue prosecuting. 29 U.S.C. § 153(d). The NLRB has reasonably determined that the point at which the General Counsel's unreviewable prosecutorial authority over the complaint's prosecution stops, and the point at which the NLRB's adjudicatory authority begins, is the commencement of a hearing. 29 C.F.R. § 102.18. The Board's rules also address a few distinct situations in which the Board's adjudicative authority may commence earlier, such as when, in response to a motion for summary judgment, the Board transfers jurisdiction of a case to itself. Private litigants cannot usurp the General Counsel's unreviewable prosecutorial discretion and force the Board to make an adjudication by filing a motion for summary judgment—the Board retains authority under its

---

[25] ROA 418.
[26] MTD, Ex. 21.
[27] Minute Order Lifting Temporary Stay, *United Nat. Foods,* No. 19-cv-1736, ECF No. 58.
[28] Motions for Summary Judgment, *United Nat. Foods,* No. 19-cv-1736, ECF Nos. 70, 71.

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

duly adopted rules and regulations to determine whether to engage in a pre-hearing adjudication.

Consistent with its reasonable rules and regulations, as well as Supreme Court authority, the NLRB correctly determined that it lacked authority to review the Acting General Counsel's decision to withdraw the unfair labor practice complaint in this matter. This is undeniably a "permissible" construction of the National Labor Relations Act, and the Board's conclusion that the withdrawal of the complaint must be affirmed.

For the same reasons, as well as those put forth in the Board's Motion to Dismiss, the Acting General Counsel's decision to withdraw the complaint was not a "final order" subject to judicial review, and this Court lacks subject matter jurisdiction.

Even if the Board and the Court had authority to review the AGC's decision to withdraw complaint, UNFI's petition must still be denied because the Company's argument that the President lacked authority to remove former General Counsel Peter Robb is not meritorious. Section 3(d) of the NLRA contains no provisions that provide the General Counsel protection against removal, unlike members of the Board, and the President is at liberty to remove the General Counsel at any time. UNFI's argument that the General Counsel's four-year term limit amounts to a *sub silentio* creation of removal protection that surpasses that

BRIEF OF INTERVENORS TEAMSTERS
LOCAL 117 an LOCAL 313 - 7

conferred on members of the Board, under which the President could not remove a General Counsel for any reason, is directly foreclosed by Supreme Court precedent and must be rejected.

## STANDARD OF REVIEW

In reviewing the NLRB's Order determining that it lacked authority to review the decision to withdraw complaint, this Court must accord *Chevron* deference to the Board's interpretations. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842, 104 S. Ct. 2778, 2781, 81 L. Ed. 2d 694 (1984).

Where a "statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *N.L.R.B. v. United Food and Commercial Workers Union, Local 23,* 484 U.S. 112, 123 (1987). The Supreme Court has held that the Act is ambiguous regarding the distinction between prosecutorial and adjudicatory actions, 484 U.S at 125-26 (there are cases "that might fairly be said to fall on either side of the division"), and thus that *Chevron* deference applies to the agency's determinations about where to draw that line. The Board's interpretation of the division of authority between the General Counsel and the Board must be accorded deference "as long as its interpretation is rational and consistent with the statute." *Id.* In cases where it is not immediately clear whether the decision at issue is prosecutorial or adjudicatory, the court's role "is not judicially to categorize each

18 WEST MERCER ST., STE. 400     **BARNARD**

SEATTLE, WASHINGTON 98119     **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132     **LAVITT LLP**

agency determination, but rather to decide whether the agency's regulatory placement is *permissible*." *Id.* at 125 (emphasis added).

## ARGUMENT

I. **The Board Reasonably Determined That The Regional Director's Decision To Withdraw Complaint Was Not Subject To Board Review Because UNFI's Motion For Summary Judgment Did Not Divest The Acting General Counsel Of His Absolute Prosecutorial Discretion.**

A. **The Board Reasonably concluded that the Act vests the General Counsel with unreviewable discretion to withdraw a complaint prior to hearing.**

Section 3(d) of the NLRA gives the General Counsel plenary authority over the prosecution of complaints: "He shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints…and in respect of the prosecution of such complaints before the Board." 29 U.S.C. § 153(d). As the Supreme Court has explained, Section 3(d) not only grants the General Counsel "unreviewable discretion to file a complaint," but also "the same discretion to withdraw the complaint before hearing if further investigation discloses that the case is too weak to prosecute." *UFCW*, 484 U.S. at 126.

In *UFCW*, the Court specifically rejected the claim that the post-issuance disposition of a complaint is necessarily adjudicatory because "until a hearing is held the Board has taken no action [and] no *adjudication* has yet taken place." *Id.* at 125 (original emphasis). Before the hearing occurs and evidence is entered into the record, "settlement or dismissal determinations are prosecutorial" and subject

to the General Counsel's unreviewable discretion. *Id*. at 125-26. *See also Sheet Metal Workers Int'l Ass'n, Local Union 28 (American Elgen)*, 306 NLRB 981, 982 (1992) (General Counsel's unreviewable final authority "includes a purely 'prosecutorial' decision to withdraw a complaint, i.e., effectively a dismissal," and the point at which "a complaint may be said to have advanced so far into the adjudicatory process that a dismissal takes on the character of an adjudication" certainly does not occur until after "the General Counsel has [] introduced evidence in support of the allegations.") (internal citations omitted).

Consistent with the General Counsel's statutory authority, the Board's regulations permit regional directors—the General Counsel's delegated agents—to "withdraw[]" complaints "before the hearing" on their "own motion." 29 C.F.R. § 102.18. Here, the Regional Director issued the Order withdrawing the complaint allegations against the Unions and dismissing Charge 19-CB-250856 on February 24, 2021, over a month before the hearing was scheduled to commence. ROA 269. Under the foregoing authorities, the AGC possessed unreviewable discretion at that point to decide not to continue to prosecute the CB charge. The February 24 Order was therefore a lawful and unremarkable exercise of the AGC's prosecutorial discretion—not an adjudication amenable to judicial review.

UNFI attempts to invert the Supreme Court's holding in *UFCW* by recasting its specific affirmation of the General Counsel's pre-hearing discretion to withdraw

BRIEF OF INTERVENORS TEAMSTERS LOCAL 117 an LOCAL 313 - 10

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

complaints as a denial of any fixed boundary between the General Counsel and the Board's authority. Co. Br. at 19-20. While the Court acknowledged that, in the abstract, some cases "might fairly be said to fall on either side of the [adjudicatory versus prosecutorial] division," it went on to affirm the lines the Board has drawn allocating final authority between the General Counsel and the Board on different kinds of decisions as a "reasonable construction" of the NLRA. *UFCW*, 484 U.S. at 123-26.

UNFI attempts to distinguish *UFCW* on the basis that the case involved the "narrow question" of whether a prehearing informal settlement was subject to judicial review. But the Court's holding was not confined to that particular posture. Instead, the Court affirmed the agency's "bright line" demarcation of prosecutorial versus adjudicative functions set forth in 29 C.F.R. 102.18 as a reasonable construction of the NLRA. *Id.* at 125-26. The Court broadly held that "it is a reasonable construction of the NLRA to find that until the hearing begins, settlement *or dismissal determinations* are prosecutorial." *Id.* (emphasis supplied). The Supreme Court thus endorsed Rule 102.18 and expressly recognized "[t]he General Counsel's unreviewable discretion to file and withdraw a complaint" until the hearing opens. *Id*. at 126.

Recognizing the steep burden it must meet to establish that the Board's decision that the withdrawal of the complaint was prosecutorial decision not

18 WEST MERCER ST., STE. 400     **BARNARD**

SEATTLE, WASHINGTON 98119     **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132     **LAVITT LLP**

subject to review was not a "permissible" construction of the NLRA, the Company attempts to characterize the Board's holding as a departure from its precedent. In a heroic effort to manufacture discrepancy between the Board's determination in the instant case and the handful of cases cited in its brief, the Company badly misrepresents the holdings of those cases as creating "longstanding Board precedent" for the proposition that when the merits of a case are being considered by an ALJ or the Board, the General Counsel no longer has unreviewable authority over the complaint. Co. Br. 26. Two of those cases directly undermine the Company's position because they involve limitations on the General Counsel's authority to continue a complaint's prosecution *after* a hearing has begun or been transferred to the Board. *See UPMC*, 365 NLRB No. 153 at *2-3, 9-13 (2017) (upholding partial dismissal of claims against respondent employer, based on employer's offer to guarantee co-respondent's performance of remedies ordered in connection with latter's proven violations, despite General Counsel's objection to proposed remedy, where the settlement was reached 19 days into hearing); *Robinson Freight Lines*, 117 NLRB 1483, 1484-86 (1957) (affirming employer's Section 8(a)(1) and (3) violations despite supplemental evidence of post-hearing agreement between union and employer to reinstate employees and withdraw pending charge). Those cases were entirely consistent with the Board's bright line pre-hearing demarcation contained in 29 C.F.R. § 102.18, since all involved

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

settlements reached after a hearing had commenced, and do not represent a "departure from precedent," as the Company suggests. Co. Br. 26. The other case relied upon by the Company, *Independent Stave Co.*, 287 NLRB 740 (1987), is no more helpful, because there the Board granted summary judgment to respondent employer over General Counsel's objection only *after* transferring the case to itself. *Id.* at 740-43.

The Board applied the consistently enforced and longstanding rule reflected in 29 C.F.R. § 102.18 to determine that the Regional Director's decision to withdraw complaint before hearing had commenced was not subject to review.

**B. The Board reasonably concluded that UNFI's mere filing of a motion for summary judgment does not unilaterally transfer the case to the Board, so that the AGC retained absolute discretion to dispose of the complaint.**

Building off its incorrect premise that the respective authorities of the General Counsel and Board can vary on a case-by-case basis—as opposed to being fixed by the Board's reasonable regulations—UNFI argues that the Board erred in finding the withdrawal of the complaint to be beyond its review because, supposedly, its filing of a motion for summary judgment required the Board to engage in an "adjudication" that divested the General Counsel of prosecutorial discretion.

UNFI's theory is founded on *dicta* from *American Elgen*, which suggests that the General Counsel's discretion to withdraw a charge *after the hearing opens*

BRIEF OF INTERVENORS TEAMSTERS
LOCAL 117 an LOCAL 313 - 13

may not be completely unreviewable if there is a "contention that a legal issue is ripe for adjudication on the parties' pleadings alone." Co. Br. 21 (quoting *American Elgen*, 306 NLRB at 981). Simply through the ministerial act of filing a motion for summary judgment, UNFI asserts that it managed to convert an otherwise prosecutorial decision into an adjudicatory one, and thereby escaped *UFCW*'s holding that the General Counsel's pre-hearing decision to withdraw a complaint is unreviewable.

UNFI's radical claim that merely filing a summary judgment motion with the Board subverts the General Counsel's authority is contradicted by the Board's reasonable rules and regulations, which provide that when a party moves the Board to resolve a charge on summary judgment, it must request that the proceeding be transferred to the Board or a member thereof pursuant to Section 102.50. 29 C.F.R. § 102.24(a) ("All motions for…summary judgment…made prior to the hearing shall be filed in writing with the Board pursuant to the provisions of §102.50."). Under Section 102.50, the case does not transfer to the Board automatically, but only when "the Board deems it necessary in order to effectuate the purpose of the Act or to avoid unnecessary costs or delay," in which case the Board will "order that such complaint and any proceeding which may have been instituted with respect thereto be transferred to and continued before it or any member of the Board." 29 C.F.R. § 102.50. Unless and until the Board accepts transfer of a

BRIEF OF INTERVENORS TEAMSTERS
LOCAL 117 an LOCAL 313 - 14

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

complaint, the evidentiary hearing will not be cancelled, and the General Counsel's authority to withdraw the complaint in advance of it cannot be extinguished. 29 C.F.R. §§ 102.18, 102.24. The mere filing of a summary judgment motion has no legal effect whatsoever.

The Company's tactic in this case is similar to that of the union's in *UFCW,* where, dissatisfied with the General Counsel's disposition of the complaint, the union argued that it "was entitled to a Board order subject to judicial review." *Id.* at 123. The Supreme Court specifically rejected this argument that proceedings had assumed an adjudicatory posture because a preliminary step—there, the filing of a complaint—had been taken which was necessary to "trigger the Board's adjudicatory authority." 484 U.S. at 125. While UNFI attempts to characterize the decision of whether to issue a Notice to Show Cause as an adjudication, in reality it is merely a "necessary [] step to trigger the Board's adjudicatory authority" rather than an adjudication itself.[29] *Id.* In direct contradiction to the Company's suggestion that it was able to unilaterally conjure an adjudication by filing a motion for summary judgment, *UFCW* instructs that "until a hearing is held the Board has taken no action; no adjudication has yet taken place." *Id.*

---

[29] UNFI's protestation that the Board's threshold decision of whether to assert jurisdiction by issuing a Notice to Show Cause is an "adjudication" misses the point. There is no dispute that a motion to transfer calls for a decision—and in that limited sense, an "adjudication"—but it is a jurisdictional one. The "adjudication" that limits the General Counsel's power to act unilaterally begins only when the Board or the ALJ takes up the "resolution" of the complaint's allegations themselves. *UFCW*, 484 U.S. at 125.

BRIEF OF INTERVENORS TEAMSTERS
LOCAL 117 an LOCAL 313 - 15

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

Relying on the above principles, the Board reasonably rejected the Company's argument that it had divested the Acting General Counsel of prosecutorial discretion by filing a motion for summary judgment. ROA 418 (Board Decision 370 NLRB No. 127, explaining that, "[a]lthough UNFI had filed its motion for summary judgment before the Regional Director withdrew the complaint, the case had not yet transferred to the Board" and was not subject to Board review). The Board's conclusion that UNFI's pending motion for summary judgment does not mean that the complaint has "advanced so far into the adjudicatory process that a dismissal takes on the character of an adjudication" is far more than a "permissible" construction of the NLRA—it is the only reasonable construction.

Contrary to UNFI's suggestion, this is not a case in which the Board was presented with a "legal issue [] ripe for adjudication on the parties' pleadings alone" such that it would have been possible for the Board to consider resolving the complaint without the introduction of any evidence. *American Elgen*, 306 NLRB at 981. UNFI's argument puts the cart before the horse by suggesting that, merely because it moved for summary judgment, it must necessarily be true that there were no factual issues in dispute necessitating a hearing. Section 102.24(b) afforded Intervenors the opportunity to file a response to the Company's Motion for Summary Judgment up until 21 days before the rescheduled hearing date of

April 6, 2021. The AGC had finally disposed of the Complaint by February 25, 2021, negating the need for Intervenors to oppose UNFI's motion. However, even under UNFI's counterfactual, in which the Board had occasion to consider whether to issue a Notice to Show Cause before the AGC had withdrawn the complaint, UNFI's circular reasoning that filing a motion for summary judgment necessarily means that a case involves purely legal issues does not withstand scrutiny.[30]

The Company further suggests that the Board acted arbitrarily in failing to treat the Company's appeal of the withdrawal of complaint as an "adjudication" because its motion for summary judgment was allegedly based on facts undisputed by the Unions in the federal district court litigation. Co. Br. 27. This argument is misplaced because it is untrue that its motion for summary judgment presented a "purely legal" matter that would have required no consideration of facts. While the federal district court litigation involved some overlap insofar as one of UNFI's defenses to enforcement of the arbitration award is that the award violates public policy embodied in the NLRA, the federal district court litigation and the ULP do not involve "the same disputed issues." Whether the award in and of itself is contrary to the Act is a separate and distinct question from whether the Unions committed unfair labor practices by seeking to enforce it. The latter implicates

---

[30] In fact, the affirmative defenses in the Unions' Answer to the Complaint raised numerous factual issues precluding summary judgment. ROA 186-88, 195-97.

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

prima facie elements and affirmative defenses that are not at issue in the federal lawsuit. For instance, even if the Company were successful in vacating the Arbitration Award, the ULP against the Unions would only be meritorious if it were shown that the Unions had made a "claim for recognition," which the Unions deny.[31] *See ADT, LLC*, 365 NLRB No. 77 at *4 (2017).

UNFI analogizes to the Federal Rules of Civil Procedure to argue that the General Counsel should lose prosecutorial discretion after a respondent files a motion for summary judgment in the same way that a plaintiff in civil litigation loses the ability to unilaterally dismiss its complaint after another party moves for summary judgment. Co. Br. 27. This argument is misplaced for several reasons. First, the Board's rules differ substantially from the Federal Rules of Civil Procedure. For instance, under the Board's rules, a party opposing a motion for summary judgment need not rely upon affidavits or other documentary evidence to show that there are genuine issues for hearing. 29 C.F.R. § 102.24(b). A party need not even respond to a motion for summary judgment unless a Notice to Show Cause is issued, and the motion is not summarily denied. *Id.* For these reasons, Federal Rules of Civil Procedure are not particularly helpful and certainly do not compel the Board to find that a party's unilateral act of filing for summary

---

[31] ROA 187 (Local 313 Answer, Fifth Affirmative Defense); ROA 196 (Local 117 Answer, Fifth Affirmative Defense).

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

judgment strips the General Counsel of the authority to control prosecution of the complaint. *See UFCW,* 484 U.S. at 116, n. 2 (analogizing the role of the General Counsel to a criminal prosecution or class action was "of little aid" and "[t]he NLRA's division of authority must … be analyzed on its own terms.").

UNFI's proposed "summary judgment motion" exception to the General Counsel's unreviewable discretion to withdraw complaints is also incompatible with the Act's purposes and, if accepted, would have dire implications for the law's enforcement.

Accepting UNFI's proposed exception would eviscerate the Supreme Court's reasoning in *UFCW.* In upholding the General Counsel's prerogative to either withdraw or settle cases prior to hearing, the Court concluded that the same type of prosecutorial judgment involved in deciding a charge has enough merit to warrant issuing a complaint applies in deciding "that the case is too weak to prosecute" and the complaint should be withdrawn. *UFCW*, 484 U.S. at 126. Thus, to the same extent the former decision is unreviewable, so too is the latter. *Id*. As the Court noted, a number of appellate courts have reached the same conclusion. *See id*. (citing *International Assn. of Machinists & Aerospace Workers v. Lubbers,* 681 F.2d 598, 604 (9th Cir. 1982), *cert. denied*, 459 U.S. 1201, 103 S. Ct. 1185 (1983) (affirming General Counsel's unreviewable authority to withdraw complaints prior to hearing); *George Banta Co. v. N.L.R.B.,* 626 F.2d 354, 356-357

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

(4th Cir. 1980), *cert. denied*, 449 U.S. 1080, 101 S. Ct. 862 (1981) (same); *Local 282, Teamsters v. N.L.R.B.,* 339 F.2d 795, 799 (2d Cir. 1964) (the General Counsel's "statutory authority in respect of the prosecution of such complaints before the Board must include the power to determine whether a complaint can be successfully prosecuted and, if he thinks not, to drop it") (cleaned up)). UNFI's theory that a charging party can overcome the General Counsel's withdrawal order by petitioning the Board for summary judgment would arrogate to a private litigant the power to decide whether a case is strong enough to continue prosecution. This would nullify the General Counsel's withdrawal power and severely weaken Section 3(d) of the Act because, if accepted, any dissatisfied party anticipating the withdrawal of a complaint could move the Board for summary judgment and thereby block the complaint's dismissal, despite the judgment of the statutorily-appointed agent for enforcing the Act that no violation has occurred. Such a self-defeating reading of Section 3(d) is inconsistent with *UFCW*'s respect for the General Counsel's prosecutorial discretion and cannot be accepted.

UNFI's theory that a litigant can force the Board to adjudicate a summary judgment motion concerning a charge that the General Counsel refuses to prosecute would not only imperil the latter's authority as prosecutor, it would convert the Board into a tribunal over litigation between private parties, contrary to the Act's purposes. Such a rule would allow any party that moved for summary

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

judgment to effectively assume the mantle of prosecutor and enforcer of the Act. This would "'in effect convert the proceeding into a two-party private litigation' (between the respondent and the charging party)." *American Elgen*, 306 NLRB at 982 (quoting *Boilermakers, Local 6*, 872 F.2d at 334). *See also Glomac Plastics, Inc.*, 241 NLRB 348, 348 (1979) ("the Board enforces the statute to implement public rights thereunder and not to adjudicate private disputes"). But "it is the General Counsel, not private litigants, whom Section 3(d) of the Act holds responsible for the 'issuance' and 'prosecution' of complaints." *Guerdon Indus., Inc.*, 127 NLRB 810, 817 (1960). As the Board recognized in *American Elgen*, private parties cannot appropriate the Board's prosecutorial machinery to serve their own ends. *American Elgen*, 306 NLRB at 982. UNFI's attempt to do exactly that here fails.

The Company's argument would create a loophole that would allow any party dissatisfied with the General Counsel's decision to withdraw a complaint to appeal the GC's decision to the Board by filing a motion for summary judgment. This type of end run around the GC's prosecutorial discretion is at direct odds with the NLRB's rule after the GC's dismissal of a complaint, "a party may appeal to the General Counsel, but not to the Board." *UFCW,* 484 U.S. at 119.

In sum, UNFI's effort to negate the Board's rules fails. Under those rules, the Board does not obtain jurisdiction to adjudicate the summary judgment motion

18 WEST MERCER ST., STE. 400   **BARNARD**

SEATTLE, WASHINGTON 98119   **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

unless and until it accepts transfer and issues a notice to show cause. Neither of those things happened here. As a result, the AGC and Regional Director retained prosecutorial discretion to withdraw the complaint against the Unions and dismiss the CB charge.

## II.    Even If The Withdrawal Of The Instant Complaint Is Reviewable, Acting General Counsel Ohr Was Empowered To Withdraw The Complaint Because President Biden Properly Removed Former General Counsel Robb And Designated Mr. Ohr His Acting Replacement.

The Company claims there was a "more fundamental reason" that Acting General Counsel Ohr lacked authority to withdraw the Complaint—his designation as Acting General Counsel was invalid because President Biden was not authorized to remove then-General Counsel Robb. Co. Br. 28. Of course, the Court may not address this argument, as the withdrawal of the Complaint is unreviewable. But even if it were reviewable, this argument is directly contrary to the plain language of § 3(d) of the NLRA.

Section 3(d) empowers the President to designate an Acting General Counsel when the General Counsel position is vacant, which it indisputably was when President Biden designated Acting General Counsel Ohr. Moreover, the plain language of § 3(d) contains no provisions that provide the General Counsel protection against removal. This is in stark contrast to § 3(a), which establishes the five-member National Labor Relations Board and does contain a removal protection clause. Applying well-established principles of statutory interpretation,

the NLRA authorizes the President to remove the General Counsel at any time.

The Company's statutory argument relies solely on a four-year term-of-office provision in § 3(d). But that argument has been consistently rejected by the courts since at least the late nineteenth century, including by the Supreme Court again just this past term. Indeed, the Company's argument asks this Court to reverse the understanding of a President's removal authority held since at least the First Congress.

A court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Cochran v. SEC*, 20 F.4th 194, 214 (5th Cir. 2021) (Oldham, J., concurring) (cleaned up). Because § 3(d) unambiguously allows the President to designate an Acting General Counsel when the General Counsel position is vacant, and unambiguously does not provide the General Counsel removal protection, President Biden was authorized to designate Ohr as Acting General Counsel.

## A. President Biden was authorized to designate an Acting General Counsel because the Office of General Counsel was vacant on January 25, 2021.

Section 3(d) of the NLRA clearly authorized President Biden to designate an Acting General Counsel to fill the vacant General Counsel position. That section provides that "[i]n case of vacancy in the office of the General Counsel the President is authorized to designate the officer or employee who shall act as General Counsel during such vacancy[.]" 29 U.S.C. § 153(d). It is undisputed that Mr. Robb vacated the office of General Counsel on January 20, 2021. *See* Co. Br.

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

8. President Biden exercised his authority under § 3(d) to designate Mr. Ohr Acting General Counsel on January 25, 2021. *See* nlrb.gov/about-nlrb/who-we-are/general-counsel/general-counsels-since-1935. Accordingly, Acting General Counsel Ohr was fully authorized to execute the duties of his office.

The Company suggests that the President could not designate the Acting General Counsel pursuant to a vacancy he created. Co. Br. 29-30. But there is no such limit on the President's authority to designate an Acting General Counsel in the plain language of § 3(d). *Goonan v. Amerinox Processing, Inc.*, 2021 WL 2948052, at *5 (D. N.J. July 14, 2021) ("the Act [] provides for the designation of an Acting General Counsel when the General Counsel's position becomes vacant, however that vacancy came to be").[32]

As Acting General Counsel Ohr was properly designated, he was authorized to withdraw the instant complaint. The Company's argument to the contrary must be dismissed.

---

[32] While the NLRA does not define "vacancy," any common sense definition would encompass the situation as of January 25. For instance, Black's Law Dictionary defines vacancy as "1. The quality, state, or condition of being unoccupied, esp. in reference to an office, post, or piece of property. 2. The time during which an office, post, or piece of property is not occupied. 3. An unoccupied office, post, or piece of property; an empty place." VACANCY, Black's Law Dictionary (11th ed. 2019). Clearly, the office of General Counsel was unoccupied as of January 25.

18 WEST MERCER ST., STE. 400     **BARNARD**

SEATTLE, WASHINGTON 98119     **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132     **LAVITT LLP**

**B. Under well-established principles of contract interpretation, § 3(d) of the NLRA provides no removal protection to the General Counsel.**

Even if President Biden's authority to designate Acting General Counsel pursuant to the vacancy in the General Counsel's office does not end the inquiry, the Company's argument still fails. Nothing in § 3(d) limited President Biden's authority to remove then-General Counsel Robb.

Section 3(a) of the NLRA provides that "[a]ny member of the Board may be removed by the President, upon notice of hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). This subsection applies solely to the five members comprising the National Labor Relations Board. 29 U.S.C. § 3(a) ("[t]he National Labor Relations Board … shall consist of five … members … appointed for terms of five years each."). The position of General Counsel is established by an entirely different subsection, namely § 3(d), which provides for "a term of four years" but is otherwise conspicuously devoid of the type of removal protection language found in § 3(a).

"That omission is telling." *Collins v. Yellen*, 141 S. Ct. 1761, 1782 (2021). That is because, "[w]hen a statute does not limit the President's power to remove an agency [officer], [courts] generally presume that the officer serves at the President's pleasure." *Id.*, *citing Shurtleff v. United States*, 189 U.S. 311, 316 (1903). Additionally, "when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed

BRIEF OF INTERVENORS TEAMSTERS
LOCAL 117 an LOCAL 313 - 25

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.*, *quoting Barnhart v. Signmon Coal Co.*, 534 U.S. 438, 452 (2002). Accordingly, under the well-established principles of statutory interpretation highlighted in *Collins*, § 3(d) offers the General Counsel no removal protection, and President Biden was authorized to remove then-General Counsel Robb. *Aakash, Inc.*, 371 NLRB No. 46, sl. op. 1-2 (2021); *Goonan*, 2021 WL 2948052 at *5 ("Based on the plain language of [§§ 3(a) and (d)], the President may relieve the General Counsel of his or her duties without the process required for Board members.").

## C. The Company's claim that the term-of-office provision in § 3(d) insulates the General Counsel from removal is directly refuted by *Collins*.

Ignoring the lessons of *Collins*, the Company claims that the clause in § 3(d) establishing the General Counsel's four-year term actually protects the General Counsel from being removed "without cause" for that term. Co. Br. 28-32. It suggests that § 3(d)'s lack of the type of removal protection language found in § 3(a) supports its interpretation, because the language in § 3(a) is a grant of removal authority to the President, rather than a limitation on the President's inherent

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

removal powers. Co. Br. 32-34. These arguments are squarely rejected by *Collins*, and are easily dismissed.[33]

In *Collins*, the Court reviewed the Housing and Economic Recovery Act of 2008 (Recovery Act), 12 U.S.C. § 4501 *et seq*, to determine whether an Acting Director of the Federal Housing Finance Agency (FHFA) was at all insulated from the President's removal authority. *Collins*, 141 S. Ct. at 1781-83. The Recovery Act provides for-cause removal for the Director of the FHFA, just as the NLRA does for the five-member Board. *Id.* at 1781-82. And just as with the General Counsel under the NLRA, the Recovery Act establishes the position of Acting Director in a separate subsection, sets a term of office ("until the return of the Director, or the appointment of a successor," 12 U.S.C. § 4512(f)), but does not repeat the same type of for-cause removal language applied to the Director. *Id.* at 1782.

The Court cited the two statutory interpretation principles quoted above[34] to find that "Congress expressly restricted the President's power to remove a

---

[33] The Company provides no explanation for why § 3(d) protects the General Counsel only from removal "without cause." *See, e.g.*, Co. Br. 28, 30, 31. Its argument would not allow any removal—for cause or no cause—even if the General Counsel engages in gross malfeasance or simply abandons its duties. That the Company cannot fully commit to its argument, and instead suggests a right to removal for cause, tellingly reveals that the Company knows the weakness of its position.

[34] 1) "When a statute does not limit the President's power to remove an agency [officer], [courts] generally presume that the officer serves at the President's pleasure"; 2) "[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same

---

BRIEF OF INTERVENORS TEAMSTERS
LOCAL 117 an LOCAL 313 - 27

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

confirmed Director but said nothing of the kind with respect to an Acting Director." *Id*. The Court further rejected arguments that the absence of removal language actually intended to insulate the Acting Director, saying this "argument draws an unwarranted inference from … silence[.]" *Id*. Thus, *Collins* makes clear that 1) for-cause removal provisions, such as those found in § 3(a) of the NLRA, are limitations on the President's removal authority, not grants of removal authority to the President; 2) the absence of that type of language, as in § 3(d) of the NLRA, means that the statute offers no removal protection; and 3) term-of-office clauses, standing alone, are not interpreted to provide removal protection.

Because the Company's position would require this Court to reject each of these points, *Collins* ends the inquiry.[35]

**D. The Company's position is not only refuted by *Collins*, but is based on arguments rejected since the founding of our nation.**

*Collins* is no outlier. Indeed, the principles *Collins* relied on are centuries old, in some cases going all the way back to our nation's founding. The Company's arguments fail in the face of this well-established precedent.

---

Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Collins*, 141 S.Ct. at 1782.

[35] *Collins* also rejects the Company's attempt to bolster its interpretation by citing § 3(d)'s use of the mandatory "shall." Co. Br. 29. Section 4512(f) of the Recovery Act also states that the President "shall" designate an Acting Director for a set term. 12 U.S.C. § 4512(f). The Supreme Court still found that the subsection did not insulate the Acting Director from removal.

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

The Supreme Court has long recognized that "[t]he right to remove is an incident to the power to appoint[.]" *In re Hennen*, 38 U.S. 230, 253 (1839). Indeed, the First Congress, in what became known as the Decision of 1789, accepted the principle that the President had the authority to remove executive officers. *Myers v. United States*, 272 U.S. 52, 119 (1926). Accordingly, "since 1789, the Constitution has been understood to empower the President to keep [subordinate] officers accountable—by removing them from office, if necessary." *Collins v. Mnuchin*, 896 F.3d 640, 661 (5th Cir. 2018), *aff'd and reinstated in relevant part on reh'g en banc*, 938 F.3d 553 (5th Cir. 2019), *aff'd in relevant part sub nom. Collins v. Yellen*, *supra* (citation and original alteration omitted). This power to keep subordinates accountable stems from the Constitution's command that the President "take Care that the Laws be faithfully executed." Art. II, § 3. Therefore, "the President's removal power is the rule, not the exception." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2206 (2020); *id.* at 2198 ("the general rule [is] that the President possesses the authority to remove those who assist him in carrying out his duties").

Because of this constitutional removal authority, the Supreme Court has long recognized that "as a matter of statutory interpretation, [] absent a 'specific provision to the contrary, the power of removal from office is incident to the power of appointment.'" *Carlucci v. Doe*, 488 U.S. 93, 99 (1988), *quoting Keim v. United*

BRIEF OF INTERVENORS TEAMSTERS
LOCAL 117 an LOCAL 313 - 29

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

*States*, 177 U.S. 290, 293 (1900); *see also Shurtleff*, 189 U.S. at 314-15 ("It cannot now be doubted that, in the absence of constitutional or statutory provision, the President can, by virtue of his general power of appointment, remove an officer, even though appointed by and with the advice and consent of the Senate."). Indeed, "[t]he right of removal would exist if the statute had not contained a word upon the subject. It does not exist by virtue of the grant, but it inheres in the right to appoint, unless limited by constitution or statute. It requires plain language to take it away." *Shurtleff*, 189 U.S. at 316.

Accordingly, the courts—and Congress through the Decision of 1789—long ago rejected the Company's claim that removal protection language, such as that extended to NLRB members in § 3(a), is required to grant the President a right to remove those officers. The courts further rejected the claim that a lack of such statutory language, such as in § 3(d) concerning the General Counsel, limits the President's authority to remove. As a matter of statutory interpretation, the President is presumed to have the authority to remove, unless plain constitutional or statutory language revokes that authority. *Collins*, 141 S. Ct. at 1783 ("we generally presume that the President holds the power to remove at will executive officers and that a statute must contain plain language to take that power away" (cleaned up)); *see also Myers*, 272 U.S. at 126 ("In the absence of any specific provision to the contrary, the power of appointment to executive office carries with

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

it, as a necessary incident, the power of removal."). "This rule of statutory interpretation is longstanding." *Severino v. Biden*, 2022 WL 168321, at *6 (D.D.C. Jan. 19, 2022).

Similarly, courts have long held that a term-of-office provision is not the type of plain language that revokes the President's removal authority. In *UFCW v. United States*, the Supreme Court interpreted a term-of-office provision for District Attorneys as a limit on the time an incumbent may hold office without reappointment, and not a restraint on the President's removal authority during that term in office. 167 U.S. 324, 342 (1897). In reaching its decision, the Court canvassed—beginning with the First Congress—the consistent positions of the legislative, executive, and judicial branches that the President had the constitutional authority to remove subordinate officers. *Id*. at 328-42. Informed by this history, the Court then applied to the term-of-office provision a "construction of limitation, and not of grant; a construction by which no more than a period of four years is permissible, subject, in the meantime, to the power of the president to remove." *Id*. at 342; *see also id*. at 339 ("Considering the construction of the constitution … as given by the congress of 1789, and having in mind the constant and uniform practice of the government in harmony with such construction, we must construe this act as providing absolutely for the expiration of the term of office at the end of four years, and not as giving a term that shall last at all events

18 WEST MERCER ST., STE. 400    BARNARD
SEATTLE, WASHINGTON 98119    IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132    LAVITT LLP

for that time").[36] Courts continue to apply this construction. *See Pievsky v. Ridge*, 98 F.3d 730, 734 (3d Cir. 1996) ("It is a long-standing rule in federal courts that a fixed term merely provides a time for the term to end. The fixed term is merely a 'cap' with the appointee removable at will.").

The Supreme Court's most recent opinions regarding the constitutionality of removal restrictions confirm the statutory interpretation that term-of-office provisions, standing alone, do not provide removal protection. In *Free Enterprise Fund*, *Seila Law*, and *Collins*, the Court determined the constitutionality of removal protections extended to certain executive officers; in each case, the statutory sections under review included term-of-office clauses in addition to more explicit for-cause removal language. *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 484, 486 (2010) (Public Company Accounting Oversight Board members serve 5-year terms, and can be removed by SEC Commissioners only "for good cause shown" and under certain procedures); *Seila Law*, 140 S. Ct. at 2193 (Director of Consumer Financial Protection Bureau serves 5-year term and can be removed only for "inefficiency, neglect of duty, or malfeasance in office"); *Collins*, 141 S. Ct. at 1771 (Director of FHFA serves 5-year term and can be removed only "for cause"). In each case, the Court found the

---

[36] The Company is wrong when it claims that the Court's decision in *Parsons* was driven by the "history" of the District Attorney position. Co. Br. 41. The history that directed the Court's decision is clearly that of the consistent acceptance of the President's inherent removal authority under the Constitution.

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

specific removal restrictions to be unconstitutional, without addressing the term-of-office provisions. *Free Enterprise Fund*, 561 U.S. at 492, 508-9 ("We hold that the dual for-cause limitations on the removal of Board members contravene the Constitution's separation of powers."); *Seila Law*, 140 S. Ct. at 2197 ("We hold that the CFPB's leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers."); *Collins*, 141 S. Ct. at 1783 ("The Recovery Act's for-cause restriction on the President's removal authority violates the separation of powers."). Accordingly, these cases "reinforce the most natural reading of *Parsons*: that [term-of-office] provisions are not standalone restrictions on the President's removal power." *Spicer v. Biden*, 2021 WL 5769458, at *4 (D.D.C. Dec. 4, 2021).

Therefore, under well-established principles of statutory interpretation, the term-of-office clause in § 3(d) does not extend any removal protection to the General Counsel. The Company's argument to the contrary must be dismissed.

**E. None of the cases cited by the Company support interpreting § 3(d) to provide the General Counsel removal protection.**

The Company ignores all of the precedent cited above. Instead, it reaches all the way back to *Marbury v. Madison, 5 U.S. 137 (1803),* to support for its position (Co. Br. 31-32), as if the Supreme Court has not repeatedly held that the cited language in *Marbury* is either dictum, or overruled. *See Myers*, 272 U.S. at 143 ("If [Chief Justice Marshall's] language was more than a dictum and a decision, then

BRIEF OF INTERVENORS TEAMSTERS
LOCAL 117 an LOCAL 313 - 33

18 WEST MERCER ST., STE. 400   **BARNARD**

SEATTLE, WASHINGTON 98119   **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

the *Parsons*' Case overruled it."); *Parsons*, 167 U.S. at 335 (explaining that the passage cited by the Company was dictum because "the material point decided was that the court had no jurisdiction over the case as presented[,]" and further suggesting that the language was limited to positions related to the District of Columbia). Indeed, by elevating *Parsons* over *Marbury* on this point, "*Myers* clarified that *Parsons* governs the construction of all term-of-office provisions, not only the provision that was directly before the *Parsons* Court." *Spicer*, 2021 WL 5769458 at *4; *see also Myers*, 272 U.S. at 241 (Brandeis, J., dissenting) ("It is settled that, in the absence of a provision expressly providing for the consent of the Senate to a removal, the clause fixing the tenure will be construed as a limitation, not as a grant.").[37]

The Company's citations to *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and *Weiner v. United States*, 357 U.S. 349 (1958) are equally unavailing, for the following reasons.

*First*, the statute at issue in *Humphrey's Executor* contained *both* a term-of-office provision and just-cause removal language. 295 U.S. at 620. The case teaches nothing about whether a term-of-office provision standing alone extends

---

[37] The Company further cites to James Madison's statement in The Federalist No. 39 suggesting that tenures in office were subject to legislative regulation. Co. Br. 31. But Chief Justice Roberts has explained that "whatever Madison may have meant by that statement, he later led the charge in contending, on the floor of the First Congress, that inasmuch as the power of removal is of an Executive nature, it is beyond the reach of the Legislative body." *Seila Law*, 140 S.Ct. at 2205 n. 10 (cleaned up).

18 WEST MERCER ST., STE. 400    BARNARD

SEATTLE, WASHINGTON 98119    IGLITZIN &

TEL 800.238.4231 | FAX 206.378.4132    LAVITT LLP

removal protection. Additionally, the Court's discussion of the "quasi-legislative and quasi-judicial" nature of the Federal Trade Commission related to the Court's larger discussion of whether the for-cause removal restrictions are constitutional; again, that discussion has no bearing on the statutory interpretation of a standalone term-of-office provision. *Id.* at 629.

*Second*, the Supreme Court has limited both *Humphrey's Executor* and *Weiner* to multimember administrative bodies that do not primarily exercise executive power. The Court explained in *Seila Law* that *Humphrey's Executor* "permitted Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." 140 S. Ct. at 2199. Similarly, in *Weiner*, the Court read a removal restriction into the War Claims Act of 1948, but did so "on the rationale that the War Claims Commission was an adjudicatory body[.]" *Collins*, 141 S. Ct. at 1783 n. 18; *see also Seila Law*, 140 S. Ct. at 2199.

The General Counsel of the NLRB—whom the NLRA grants "final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under [29 U.S.C. § 160], and in respect of the prosecution of such complaints before the Board," 29 U.S.C. § 153(d)—is not a multimember body of experts, balanced along partisan lines, that performs only legislative and

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

judicial functions and exercises limited or no executive power. *Cf. Seila Law*, 140 S. Ct. 2200 (CFPB Director "cannot be described as a 'body of experts' and cannot be considered 'non-partisan' in the same sense as a group of officials drawn from both sides of the aisle," and the Director's "enforcement authority includes the power to seek daunting monetary penalties against private parties on behalf of the United States in federal court—a quintessentially executive power"). Nor is the General Counsel an adjudicatory body. Accordingly, neither case applies in the instant context because the General Counsel, unlike the FTC Commissioners or the War Claims Commissioners, exercises more than limited executive power.[38]

The Company's argument that the General Counsel does not exercise executive power is undermined by the fact that both the legislative and executive branches have confirmed the view that the General Counsel is within the Executive branch. In passing the Federal Vacancies Reform Act (FVRA), 5 U.S.C. § 3345, *et seq*, which applies to "officer[s] of an Executive agency," § 3345(a), Congress included the General Counsel of the NLRB in its coverage, but exempted the Board itself, § 3349c(1).[39] And the Executive branch, evidenced by an Office of

---

[38] Whether certain voluntary delegations by the Board to the General Counsel (Co. Br. 37-39) can be considered delegations of quasi-legislative or quasi-judicial authority is irrelevant, as *Humphrey's Executor* and *Weiner* could only be applicable if the General Counsel exercised limited or no executive power.

[39] The FVRA exempts the General Counsel from its provisions empowering the head of the agency to perform the General Counsel's duties while no Acting General Counsel is appointed. 5 U.S.C. § 3348(b) & (e). The legislative history shows this was intended to ensure the duties of

BRIEF OF INTERVENORS TEAMSTERS LOCAL 117 an LOCAL 313 - 36

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITZIN LLP**

Legal Counsel memo authored by future Solicitor General J. Lee Rankin (ROA 299-303) and a White House Counsel memo by future Chief Justice John Roberts (ROA 305-07), has consistently taken the position that the General Counsel is an Executive branch officer subject to at-will removal by the President. ROA 307 (Roberts' memo further cites to another OLC memo authored by future D.C. Circuit Court Judge Malcolm R. Wilkey that was consistent with the earlier Rankin memo).

*Third*, the Company cites *Humphrey's Executor* and *Weiner* in an attempt to bootstrap the General Counsel into the removal protections provided to the five-member Board. The Company conflates the Board and General Counsel by claiming that, since the Board performed the duties of the General Counsel prior to the Taft-Hartley amendments, "Congress merely diffused th[o]se Board functions to an additional expert administrative actor[.]" Co. Br. 45 (referring to General Counsel as an "agent" of the Board). But the Company's argument ignores one of the main legislative goals in the creation of the General Counsel—to cleave the responsibilities of prosecuting NLRA violations from adjudicating them. *UFCW*, 484 U.S. at 124 ("The words, structure, and history of the [Taft-Hartley] amendments to the NLRA clearly reveal that Congress intended to differentiate

---

the General Counsel maintained separation from the Board itself. S. REP. NO. 105-250, at 20 (1998).

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

between the General Counsel's and the Board's 'final authority' along a prosecutorial versus adjudicatory line."). Taft-Hartley created the position of General Counsel which, while "within the agency," is "independent of the Board's authority." *Id*. at 129. The Company's argument disregards this intent. Indeed, the Company's argument is that the General Counsel is an "agent" of the Board, yet is not responsible to the Board or the President. Such an office is simply not countenanced by the Constitution.

The cases cited by the Company offer no support for this Court to ignore the plain language of § 3(d), which clearly empowered the President to remove then-General Counsel Robb.

## F. The Company's remaining arguments cannot overcome the unambiguous statutory language, and lack merit regardless.

The Company offers additional arguments to bolster its position that President Biden did not have the authority to remove then-General Counsel Robb. Those arguments do not trump the unambiguous statutory language, and, regardless, are meritless.

*First*, the Company repeatedly claims that the legislative history of Taft-Hartley "confirms that Congress meant for the General Counsel to be independent of the President." Co. Br. 42. In reality, that history shows that Congress intended for the General Counsel to be accountable to the President. The House Conference Report states that, with § 3(d), "responsibility for what takes place in the Board's

BRIEF OF INTERVENORS TEAMSTERS
LOCAL 117 an LOCAL 313 - 38

18 WEST MERCER ST., STE. 400     **BARNARD**

SEATTLE, WASHINGTON 98119     **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132     **LAVITT LLP**

regional offices is centralized in one individual, who is ultimately responsible to the President and Congress." House Conf. Rept. No. 510, 80th Cong., 1st sess., p. 37, *reprinted in* 1 LMRA LEG. HIST. 541. Similarly, in a supplemental analysis of the 1947 amendments, Senator Taft, the chief Senate sponsor, wrote that the proposed § 3(d) transferred final authority over investigation and issuance of complaints alleging unfair labor practices from "an anonymous little group" of Board employees "to a statutory officer responsible to the President and to the Congress." 93 Cong. Rec. 7001 (1947), *reprinted in* 2 LMRA LEG. HIST. at 1623. The view that the General Counsel, in exercising its authority, would be responsible to the President and Congress is consistent with the view that the officer is responsible to the President under the President's removal authority, and to Congress because of the need for reappointment after the term ends. *See Parsons*, 167 U.S. at 342. If there were any doubt that was what Senator Taft meant, it is erased by his subsequent comparison of the General Counsel to the "Attorney General of the United States," who indisputably serves at the will of the President. 2 LMRA LEG. HIST. at 1623.

*Second*, the Company purposely obfuscates the history of presidential treatment of General Counsels in order to claim that the removal of Robb was unprecedented. In the Company's words, "the President's attempt to remove Robb marks the first time any President has removed a Board General Counsel *who*

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

*refused to resign.*" Co. Br. 40 (emphasis added). As the Company tacitly admits, Presidents have sought the removal of General Counsels before. Indeed, President Truman demanded that the very first General Counsel, John Denham, resign, which Denham did, saying that he felt he had to comply. Joseph A. Loftus, *Denham Quits Job with Reluctance*, N.Y. TIMES, Sept. 17, 1950, at 1, 84. President Truman demanded the resignation precisely because of philosophical differences between Denham and the administration and the Board. *Id.* The only difference between Denham and Robb is that Denham recognized the President's ability to remove him from office and acquiesced to a President's demand for his resignation, and Robb did not. In either case, the President had the General Counsel removed from office.

The Company presents no argument that supports its claim that the President could not remove then-General Counsel Robb, and designate Peter Ohr as Acting General Counsel. The Company's appeal must be dismissed.

## CONCLUSION

For the foregoing reasons, Intervenors respectfully request that the Court dismiss UNFI's petition for review for lack of subject matter jurisdiction. In the alternative, Intervenors request that the Court deny the petition on the merits.

Respectfully submitted this 22nd day of February, 2022.

*s/ Danielle Franco-Malone*
Danielle Franco-Malone

18 WEST MERCER ST., STE. 400  **BARNARD**

SEATTLE, WASHINGTON 98119  **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**

Ben Berger
BARNARD IGLITZIN & LAVITT LLP
18 West Mercer Street, Ste. 400
Seattle, WA 98119-3971
Tel: (206) 257-6011
Tel: (206) 257-6006
Fax: (206) 378-4132
franco@workerlaw.com
berger@workerlaw.com

*Attorney for Intervenors Teamsters Local 117 and Local 313*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of February, 2022, a true and correct

copy of this **Brief of Intervenors Teamsters Local 117 and Teamsters Local 313**

was served upon all counsel of record by operation of the Court's CM/ECF system.


Dated: February 22, 2022             *s/ Danielle Franco-Malone*
                                     Danielle Franco-Malone
                                     Ben Berger

                                     *Attorneys for Intervenors Teamsters Local
                                     117 and Local 313*

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f), this document contains 9,680 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and 5th Cir. Rule 32.1, and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

Dated: February 22, 2022

*s/ Danielle Franco-Malone*
Danielle Franco-Malone
Ben Berger

*Attorneys for Intervenors Teamsters Local 117 and Local 313*

CERTIFICATE OF SERVICE - 43